OPINION
This is an accelerated appeal taken from a final judgment of the Eastern Division of the Trumbull County Court. Appellant, Judy Hackett, appeals from her conviction for criminal damaging following a trial by jury.
Appellant owned a parcel of land in Masury, Ohio. Robert F. Miller ("Miller") owned property next door to her. For whatever reason, there was lingering tension between the two neighbors.
On August 19, 1997, Miller was having work done on his property. He had previously hired Braho Asphalt Construction Company ("Braho") to blacktop his driveway. On the day in question, a crew from Braho arrived at approximately 3:00 p.m. to begin the project. The Braho workers parked about six trucks and pieces of construction equipment along the side of the roadway.
At some point during the paving process, appellant returned home. Upon doing so, she noticed that several of the Braho trucks and heavy equipment were allegedly parked on her property. Appellant spoke with two of the Braho employees and asked that the vehicles be moved off her land. Appellant also threatened to call the police for the purpose of having the vehicles towed away if the workers did not comply.
Appellant then left to run an errand. Upon returning about ninety minutes later, she saw that the Braho equipment had been moved off her property. Appellant however, claimed that there were ruts left in her yard where the vehicles had been parked. In a state of anger, appellant got into her vehicle and drove directly in front of Miller's driveway which was still in the process of being blacktopped. Miller walked up to the driver's side window and asked, "Have you got a problem?" Appellant ignored the inquiry and simply drove her vehicle into Miller's driveway. As appellant did so, Miller had to place his hands on the vehicle and push himself backward to avoid being hit.
After pulling into the driveway, appellant slammed on her brakes, thereby causing the still hot, wet, unrolled blacktop to conglomerate into a pile. Appellant then allegedly turned her vehicle's wheels back and forth in an effort to cause further damage to the unfinished driveway. One of the Braho workers yelled at appellant to stop what she was doing. In response, appellant gave him an obscene gesture with her middle finger commonly known as "the bird."
Appellant finally backed her vehicle out of Miller's driveway. As she exited the driveway, appellant repeated the obscene gesture at Miller. The episode ended with appellant driving next door to her house and parking her vehicle.
On September 3, 1997, Miller filed a complaint against appellant for criminal damaging in violation of R.C. 2909.06. Miller appeared in person before a clerk of the court of record to swear out the affidavit alleging that appellant criminally damaged his property. The complaint indicated that the offense with which appellant was being charged was a misdemeanor of the first degree.
On October 10, 1997, appellant filed a motion to dismiss the charge against her. The sole basis of the motion was that an alleged conflict of interest existed because the chief prosecutor assigned to the trial court had previously represented a party who had opposed appellant in an unrelated domestic relations proceeding. The record does not contain any written ruling on the motion, but it was obviously denied.
The case proceeded to a jury trial on November 13, 1997. The state called six witnesses. They consisted of Miller, two Braho employees, two neighbors, and Miller's grandson. All of them testified that appellant purposefully drove into Miller's driveway in a fit of anger while it was still being blacktopped. The only witness to testify for the defense was appellant. She testified that the only reason she drove into Miller's driveway was to speak with one of the Braho employees. Appellant claimed that she needed to obtain a business card from the worker so that she could report the damage to her yard to her insurance company.
Following deliberations, the jury returned a guilty verdict. Sentencing was delayed for almost a month while the matter was referred to the probation department for the preparation of a presentence investigation report. On December 11, 1997, the trial court sentenced appellant to ninety days in jail, a $500 fine, and probation. Eighty-seven days of the jail sentence and $250 of the fine were suspended. As one of the express terms of probation, the trial court ordered appellant to make restitution to Miller in the amount of $600 for the damage to the driveway.
From this judgment, appellant timely appealed to this court. She now asserts the following assignments of error:
 "[1.] The Trial Court erred in allowing the matter to proceed to hearing/trial because the charges were done when a conflict of interest existed.
 "[2.] The Jury's Verdict was one that went against the weight of the evidence presented in that the Prosecutor did not meet its burden of proof.
 "[3.] The Trial Court did not provide complete instructions to the Jury as to all elements of the crime.
 "[4.] The Trial Court erred in the granting of restitution to the alleged victim for the criminal damaging when there was no evidence presented as to the amount of damage."
In her first assignment of error, appellant contends that the trial court erred by allowing the case to proceed to trial when a conflict of interest existed between herself and the chief prosecutor assigned to the court of record. The prosecutor in question was Attorney Kenneth Inskeep ("Inskeep"). According to appellant, Inskeep had previously represented a party who had opposed appellant in a domestic relations action.
At the outset, we would note that there is absolutely nothing in the record to demonstrate the accuracy of this assertion. However, even assuming arguendo that appellant is correct, we see no basis whatsoever for concluding that the trial court erred by not dismissing the charge that was pending against her. We arrive at this conclusion for two reasons.
First, it was Miller, not Inskeep, who filed the complaint against appellant. A private citizen may employ either of two methods "in order to cause the arrest or prosecution of a person charged with committing an offense[.]" R.C. 2935.09. See, also,State v. Patterson (May 22, 1998), Trumbull App. No. 96-T-5439, unreported, at 8, 1998 Ohio App. LEXIS 2289. The complainant may allege that an offense has been committed by filing an affidavit with a judge, a clerk of the court of record, or a magistrate. Alternatively, the complainant may file such an affidavit with a prosecuting attorney. See, generally, R.C. 2935.17 (providing model forms for an affidavit and a complaint). See, also, Forms I and II in the Appendix of Forms attached to the Ohio Rules of Criminal Procedure.
In the former scenario, the affidavit is the charging instrument and, in effect, functions as the complaint. Under the latter scenario, the prosecuting attorney files a formal complaint and attaches the complainant's affidavit thereto. Patterson, 1998 Ohio App. LEXIS 2289, at 8; see, also, 2 Katz Gianelli, Criminal Law (1996), 2-3, Section 35.3.
In the sub judice, the case against appellant was initiated by Miller when he filed a complaint with a clerk of the court of record. Thus, Inskeep had nothing to do with the commencement of the prosecution against appellant.
Second, Inskeep did not actually prosecute the matter. The record demonstrates that an assistant prosecutor serving under Inskeep prosecuted the case on behalf of the state. Hence, Inskeep did not conduct the trial on the complaint that had been filed by Miller.
In light of the fact that Inskeep neither initiated the complaint nor litigated the case in court, it is apparent that appellant failed to demonstrate any discernible conflict of interest that would have justified the dismissal of the charge against her prior to trial. No prejudice of any kind was shown. Appellant's first assignment is not well-taken.
In her second assignment of error, appellant asserts that the jury's verdict was against the manifest weight of the evidence.[1] The test for whether a criminal conviction runs counter to the weight of the evidence is as follows:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983), 20 Ohio App.3d 172, 175. See, also, State v. Thompkins (1997), 78 Ohio St.3d 380, 390
(Cook, J., concurring).
As a general matter, the weight to be given the evidence and the credibility of witnesses are primarily for the trier of fact to decide. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. When reviewing questions of weight, the role of an appellate court is to engage in a limited weighing of the evidence adduced at trial in order to determine whether the state appropriately carried its burden of persuasion.
After reviewing the entire record, we conclude that the guilty verdict on the charge of criminal damaging was not against the weight of the evidence. The state presented the testimony of Miller who recounted how appellant positioned her vehicle directly in front of his driveway before intentionally driving into the unfinished blacktop. Beyond this, the state also called two Braho employees, two neighbors, and Miller's grandson. All of these men witnessed the incident and testified to the same effect as Miller.
Although appellant testified that she did not intend to damage Miller's unfinished driveway, the jury obviously did not accord much credibility to her account. It was uncontroverted that appellant drove her vehicle into Miller's driveway while it was still being blacktopped by the crew from Braho. Appellant even conceded during her testimony that she was extremely angry when she entered the driveway and that she "flipped off" one of the Braho employees.
In light of the evidence introduced at trial, we do not believe that the jury lost its way or created a manifest miscarriage of justice. Appellant's second assignment lacks merit.
The third assigned error challenges the trial court's instructions to the jury. Specifically, appellant posits that the trial court erred by omitting an essential element of the offense from its instructions to the jury.
Appellant stands convicted of the first degree misdemeanor version of criminal damaging. R.C. 2909.06 provides in relevant part:
 "(A) No person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent:
"(1) Knowingly, by any means;
"* * *
 "(B) Whoever violates this section is guilty of criminal damaging or endangering, a misdemeanor of the second degree. If a violation of this section creates a risk of physical harm to any person, criminal damaging or endangering is a misdemeanor of the first degree. * * *"
Thus, the statute provides that criminal damaging is ordinarily a second degree misdemeanor. If, however, the act of criminal damaging also creates a risk of physical harm to any person, then the offense is elevated to a misdemeanor of the first degree.
Initially the question presented is whether the R.C. 2909.06(B) language "creates a risk of physical harm to any person" is an element of the first degree misdemeanor version of the offense or, alternatively, is simply an enhancement of the penalty. Upon review, it is obvious that it is an actual element.
The creation of a risk of physical harm to a person does not merely enhance the penalty. Instead, it transforms the crime itself by increasing its degree. In such a case, it is an essential element of the offense and must be proved by the state beyond a reasonable doubt. State v. Allen (1987), 29 Ohio St.3d 53,54.
In the case at bar, appellant was ostensibly charged with first degree misdemeanor criminal damaging. We say "ostensibly" for a reason. The complaint filed against appellant read in pertinent part:
 "Complainant being duly sworn states that Judy Hackett, Defendant, at Brookfield Twp., Trumbull County, Ohio on or about August 19, 1997, did knowingly cause or create a substantial risk of physical harm to any property of another or person without the other's consent * * * which is in violation of Section 2909.06 of the Ohio Revised Code[.]" (Emphasis added.)
A review of the complaint reveals that it restated the relevant language of R.C. 2909.06(A). It, however, made only an ambiguous reference to the R.C. 2909.06(B) requirement that the violation created "a risk of physical harm to any person[.]"
Crim.R. 3 governs complaints in Ohio. It provides in part that "[t]he complaint is a written statement of the essential facts constituting the offense charged." Pursuant to this requirement, the complaint should have expressly referenced the essential fact that appellant simultaneously created a risk of physical harm to Miller during the commission of the criminal damaging.
Instead, the complaint stated that appellant created "a substantial risk of physical harm to any property of another or person[.]" By using the word "or" rather than the word "and," the complaint was incorrectly phrased in the alternative. Moreover, R.C. 2909.06(B) requires only a risk of physical harm to any person; the risk to the person does not have to be substantial.
Despite its lack of clarity, the complaint did classify the offense being charged as a misdemeanor of the first degree. As indicated previously, this degree of the offense includes the additional requirement that the act of criminal damaging created a risk of physical harm to any person. If appellant was confused as to whether she was being charged under R.C. 2909.06(A) or (B), she could have requested a bill of particulars pursuant to Crim.R. 7(E). She, however, made no such request.
At trial, the state clearly proceeded under the theory that appellant created a risk of physical harm to Miller while damaging his property. The state elicited testimony from Miller and the other eyewitnesses to the effect that appellant nearly ran Miller over with her vehicle as she pulled into the driveway.[2]
Following closing arguments, the trial court charged the jury on its duty in rendering a verdict. In summarizing the elements of the offense, however, the trial court made no mention whatsoever of the creation of a risk of physical harm to a person. The trial transcript clearly reveals this omission. Beyond this, the trial court filed a written copy of its jury instructions in the record. This written version closely paralleled the oral instructions that the trial court gave to the jury, including the omission of any reference to the element of physical harm to a person.
Counsel for appellant, however, failed to object to the jury charge. Crim.R. 30(A) states in part:
 "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection."
Pursuant to this rule, the failure to object to a jury instruction in a timely fashion generally constitutes a waiver of any claimed error relative to the instructions. Under Crim.R. 52(B), however, this court has the power to recognize plain error or defects involving substantial rights even if they were not brought to the attention of the trial court. State v. Moreland
(1990), 50 Ohio St.3d 58, 62.
In the context of a criminal case, a court of review should invoke the plain error doctrine only under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Jenks (1991), 61 Ohio St.3d 259, 282; State v.Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. It is often said that plain error does not exist unless, but for the error, the outcome of the proceeding would have been different. Jenks, 61 Ohio St.3d at 282; Moreland,50 Ohio St.3d at 62; Long, 53 Ohio St.2d at paragraph two of the syllabus.
The Supreme Court of Ohio has held that the "[f]ailure of a trial court to separately and specifically instruct the jury on every essential element of each crime with which an accused is charged does not per se constitute plain error under Crim.R. 52(B)." (Emphasis sic.) State v. Adams (1980), 62 Ohio St.2d 151, paragraph two of the syllabus. In Adams, the trial court neglected to instruct the jury on the mens rea element of recklessness required to establish criminal liability under the endangering children statute. The Supreme Court noted that the existence of recklessness was not an issue at trial because the defendant relied solely on the defense that he had never abused the victim. Consequently, the Adams court held that the trial court's failure to instruct the jury on the essential element of recklessness did not result in a manifest injustice being perpetrated on the defendant. Id. at 155.
By contrast, in the instant matter, the question of whether appellant created a risk of physical harm to Miller clearly was in controversy at trial. Therefore, the trial court should have instructed the jury on the element of "risk" as defined in R.C.2901.01(7) and the element of "physical harm to persons" as defined by R.C. 2901.01(3). See, also, 4 Ohio Jury Instructions (1997), Section 509.06, at 230-231.
After concluding that appellant committed criminal damaging in violation of R.C. 2909.06(A)(1), the jury had to make an additional finding in order to determine the degree thereof of the misdemeanor offense. The jury was unequipped to do so because of the trial court's failure to instruct its members on an essential element of the first degree version of the offense, to wit: the creation of a risk of physical harm to any person.
This omission from the jury charge resulted in a manifest injustice being perpetrated on appellant, thereby rising to the level of plain error under Crim.R. 52(B). Appellant's third assignment is well-taken.
In her fourth and final assignment of error, appellant proposes that the trial court erred by requiring her to pay Miller restitution in the amount of $600 as part of her probation. Specifically, appellant claims that $600 was an arbitrary figure unsupported by any evidence in the record.
Initially, we would observe that there is a document in the record which appears to be a written estimate for $600 to fix the driveway. The estimate was provided by Braho to Miller and is dated August 20, 1997. However, it is unclear how this estimate became a part of the record. For example, the transcript does not reveal that it was introduced as an exhibit by the state at trial. Because we do not know how the estimate became part of the record, we will not dispose of this assignment based solely on its presence in the trial court file.
Instead, we note that appellant failed to file a transcript of the sentencing hearing that was held on December 11, 1997. At this proceeding, the trial court would have reviewed appellant's sentence and the terms of her probation, including the court-ordered restitution. An appellate court indulges in a presumption of regularity of the proceedings below when reviewing a lower court's judgment. Hartt v. Munobe (1993), 67 Ohio St.3d 3,7; State v. Fisher (June 27, 1997), Portage App. No. 96-P-0242, unreported, at 3, 1997 Ohio App. LEXIS 2827. In the absence of a transcript from the sentencing hearing, this court can only presume that the judgment of the trial court was valid and that there was a basis in the record for ordering appellant to pay $600 in restitution to Miller for the damage inflicted on his driveway.
It should also be noted that restitution was statutorily authorized in this case. R.C. 2929.21(E) states in pertinent part that the trial court "may require a person who is convicted of or pleads guilty to a misdemeanor to make restitution for all or part of the property damage that is caused by the offense[.]" Appellant's fourth assignment is without merit.[3]
Based on the foregoing analysis, appellant's first, second, and fourth assignments of error are not well-taken. Appellant's third assignment, however, is well-taken. Accordingly, the judgment of the trial court is reversed, and the matter is hereby remanded to the trial court for further proceedings consistent with this opinion. On remand, the trial court is ordered to vacate its previous judgment in which it entered the conviction and sentence against appellant for the first degree misdemeanor of criminal damaging. After vacating this judgment, the trial court is further instructed to enter a conviction against appellant for the second degree misdemeanor of criminal damaging and to resentence appellant accordingly.[4]
_______________________________________ PRESIDING JUDGE JUDITH A. CHRISTLEY
NADER, J.,
O'NEILL, J., concur.
[1] In addressing this assignment, we are intentionally ignoring the question of whether the state proved beyond a reasonable doubt that appellant's conduct created a risk of physical harm to any person. This matter will be fully explored in our analysis of the third assignment of error.
[2] Although the state's brief indicates that this occurred when appellant pulled out of the driveway, the transcript demonstrates that Miller testified that appellant nearly ran him over as she pulled into the driveway.
[3] This assignment can also be deemed moot given that we are ordering the trial court to vacate the judgment being appealed and to resentence appellant after reducing her conviction to a second degree misdemeanor.
[4] On this point, we would note that the original sentence given to appellant not only fell within the parameters permitted by statute for a first degree misdemeanor, but for a second degree misdemeanor as well. See R.C. 2929.21. Thus, it is possible that the trial court could reimpose the same penalties upon resentencing.